**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY HERNANDEZ** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-4001** |
| | : | |
| **ERIC TICE,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                          **March 8, 2021**

The Lancaster County Drug Task Force obtained warrants to search known heroin dealer Jeffrey Hernandez and his home based on surveillance, two confidential informants, and several controlled heroin purchases. The Drug Task Force searched Mr. Hernandez and his home consistent with the warrant. It found heroin on his person and in his home and arrested him for possession with intent to distribute heroin and related crimes. Mr. Hernandez moved to suppress arguing the Drug Task Force lacked probable cause for the warrants. The Lancaster County judge disagreed and denied his suppression motion following a hearing. Mr. Hernandez decided to admit his guilt and enter a plea after swearing he spoke to his counsel about, among other things, the loss of his rights to appeal the adverse suppression order. The state court later sentenced twenty-five-year-old Mr. Hernandez to a minimum of sixty-three months in prison. The trial court denied his prompt post-sentence motion. The trial court then denied his Post-Conviction Relief Act claim based solely on his claim trial counsel failed to advise he gave up his right to appeal the adverse suppression ruling by pleading guilty. The Pennsylvania Superior Court affirmed after finding no ineffective assistance on the only claim before it.

Mr. Hernandez now seeks habeas relief arguing his trial counsel provided him constitutionally ineffective assistance by failing to advise him a plea (as opposed to a stipulated

bench trial) would waive a right to appeal the adverse suppression ruling and for failing to object to the sentence which he views as violating Supreme Court law on life sentences imposed on juveniles. We deny both claims. Mr. Hernandez confirmed he knew of waiving his appeal rights after speaking to his counsel. His trial counsel's performance met the required standards as Mr. Hernandez confirmed to the trial judge. His second claim relating to Supreme Court direction as to juvenile life sentences is unexhausted, procedurally defaulted, and lacks merit. We deny Mr. Hernandez's petition and a certificate of appealability.

I.      **Relevant facts adduced from the state court record**[1]

        The Lancaster County Drug Task Force prepared a six-page, seventeen-paragraph affidavit of probable cause detailing its investigation into Mr. Hernandez's heroin business.[2] The Drug Task Force's affidavit of probable cause details events beginning in 2013 when it learned Mr. Hernandez, also known as "Jeffri" and "Jay," sold heroin from his home on Zook Avenue in Lancaster and from his car. The Drug Task Force details three controlled heroin buys between a confidential informant and Mr. Hernandez in 2014.[3]

        The Drug Task Force continued to detail information received in May 2016 from a second confidential informant with personal knowledge of Mr. Hernandez's heroin business operated from his Zook Avenue residence in Lancaster and from his car in the Lancaster City area. After surveillance and further investigation of Mr. Hernandez, the Drug Task Force arranged for two controlled heroin buys between the confidential informant and Mr. Hernandez on June 19 and July 3, 2016 at Mr. Hernandez's Zook Avenue residence. Drug Task Force members surveilled both controlled buys, including Mr. Hernandez driving the car identified by the confidential informant from whom Mr. Hernandez sold heroin.[4] Within forty-eight hours of the July 3, 2016 transaction, the confidential informant reported to the Drug Task Force Mr. Hernandez told the informant he

(Mr. Hernandez) has quantities of heroin for sale.[5] A magisterial district judge issued search warrants on July 8, 2016 based on the Drug Task Force's detailed affidavit of probable cause.

The search of Mr. Hernandez resulted in the seizure of 14.9 grams, or 358 individual bags, of heroin. The search of Mr. Hernandez's home resulted in the seizure of another 2.18 grams of heroin, or 149 individual bags, of heroin as well as drug paraphernalia. Lancaster County Police arrested Mr. Hernandez, then twenty-four-years old, and charged him by Criminal Information with possession with intent to deliver heroin, criminal conspiracy, and possession of drug paraphernalia found in his residence and possession with intent to deliver the 14.9 grams of heroin found on his person.[6]

### Mr. Hernandez's suppression motion and immediate guilty plea following a written and oral colloquy.

Mr. Hernandez's court-appointed counsel filed an omnibus pretrial suppression motion challenging the validity of the search warrants for Mr. Hernandez's home and person. His counsel argued the Drug Task Force lacked probable cause to search Mr. Hernandez and his home. After hearing evidence at a May 17, 2017 suppression hearing, the trial court denied the motion having found the search warrants proper and supported by sufficient probable cause.[7]

Shortly after the trial court denied his suppression motion, Mr. Hernandez signed a Guilty Plea Colloquy and Post-Sentence Rights form on May 17, 2017. At the top of the form, the Commonwealth advised Mr. Hernandez: "Your attorney is required to review this document with you and answer your questions regarding the consequences of your decision to plead guilty. If, after reviewing this document, you have any questions that have not been answered, please inform the Court."

After reviewing the warning and consulting with counsel, Mr. Hernandez responded "Yes"

to:

- "Do you understand that if you filed any pre-trial motions (such as a suppression motion), that you are giving up your right to be heard on them by pleading guilty?"

- "Do you understand that by pleading guilty, you are limiting your appeal rights?"

- "Do you understand that after you plead guilty, your appeal rights are limited to three issues?"

- "The first issue is whether this Court has the jurisdiction to hear your case. In other words, did this offense happen in Lancaster County. Do you understand the first appeal issue?"

- "The second issue is the voluntariness of your plea. In other words, is your decision to plead guilty a knowing, intelligent, and voluntary decision on your behalf. Do you understand the second appeal issue?"

- "The third issue is the legality of the sentence. In other words, does the sentence you receive fit within what the legislature says you can get for an offense of this nature. Do you understand the third issue?"

- "Do you understand that, after pleading guilty, you are limited to these three issues on appeal?"

- "Do you understand that with any appeal to the Pennsylvania Superior Court, you are limited to the same three issues described [in the above paragraphs]?"

- "Do you understand that if this is an open plea without a plea agreement, you have a fourth issue on appeal?"

- "Do you understand that in that case, the fourth issue on appeal is the discretionary aspects of the Court to sentence you as it did?"

- "Have you had sufficient time to review this information with your attorney?"

- "If you did not understand any part of this form, has your attorney explained it to you so that you now understand?"

- "After reviewing all of this information with your attorney, do you still wish to enter a guilty plea?"

4

After responding he understood the questions and reviewed the issues with his counsel, Mr. Hernandez signed the form affirming he reviewed the entire document with his attorney and knew the consequences of his guilty plea including the loss of his ability to appeal the adverse suppression ruling: "I affirm that I have reviewed the entire document with my attorney and I am aware of the consequence of my guilty plea. With a full understanding of my rights as explained in this document, I am voluntarily pleading guilty and signing this Guilty Plea Colloquy."

The trial court then orally heard from Mr. Hernandez in reliance upon his written colloquy. Mr. Hernandez responded to the trial court's colloquy by swearing he understood he does not have to plead guilty and a jury is standing by ready to select a panel for a trial; he is innocent until proven guilty; if he went to trial the Commonwealth has the burden to prove all elements of all charges against him beyond a reasonable doubt; and by pleading guilty, he is waiving those rights.[8] Mr. Hernandez told the trial court he had an opportunity to speak with his attorney and he is satisfied his attorney answered all of his questions. [9] Mr. Hernandez understood the elements of the charges against him for possession with intent to deliver a controlled substance (heroin), conspiracy, and possession of drug paraphernalia, and understood the maximum potential sentence for each offense and sentencing guidelines.[10] The trial court recognized Mr. Hernandez earlier expressed concerns about the services rendered by trial counsel and asked if Mr. Hernandez is satisfied with the services rendered. Mr. Hernandez responded he is satisfied.[11]

After the Commonwealth detailed the facts supporting a guilty conviction—the July 8, 2016 search warrant executed by the Drug Task Force finding fourteen grams of heroin on Mr. Hernandez and two grams in his residence and agreed with another person to possess these items —Mr. Hernandez conceded "all those facts [are] correct."[12] After colloquy, the trial court accepted Mr. Hernandez's knowing, voluntary, and intelligent guilty plea. Mr. Hernandez agreed to an open

5

plea with no recommendation for the term of sentence. The trial court deferred sentencing pending completion of a pre-sentence investigation report and a mental health evaluation requested by his attorney.

### *The trial court sentences Mr. Hernandez to a minimum of sixty-three months.*

Following a hearing including review of the presentence investigation and psychiatric evaluation, he trial court sentenced Mr. Hernandez to an aggregate sentence of 63 months to 15 years in incarceration.[13] The trial court addressed Mr. Hernandez:

> Mr. Hernandez, there is a serious disconnect here between the person that your family and friends know and the person who is peddling this poison to the community. I have no doubt that to your family and friends you're a nice guy and you care much about your family and friends. Unfortunately, you don't care much about other people. You don't care how sick they get, you don't care whether they die or not because of this poison. You just want to make money on it. Unfortunately, you haven't gotten the message. You've been to the state prison twice for drug dealing, and yet within a very short period of time you get out and you're right back at it again. I have reviewed the presentence investigation report in detail. I've read all the attachments. And as noted previously, I have received a number, quite a number, of letters from family and friends. . . . You're here today because you are a drug dealer.

> The defendant is 25 years of age, which shows sufficient maturity to understand the significance of his actions. Again, I've reviewed the psychiatric evaluation – or psychological evaluation, which indicates some issues with regard to a possible learning disability; however, there's nothing to indicate that you did not understand or know what you were doing. The defendant can read and write and understands the English language, indicating that language did not prevent him from knowing or understanding what he was doing.

> * * *

> According to my calculations and review of the presentence investigation report of the information I have before me, this is the ninth time the defendant has appeared before the Court since 2011 as an adult, and you're only 25 years old, just turned 25 years old. There's little to indicate that the defendant has made an effort to change his lifestyle since he became 18 years of age. In fact, he continues with his drug dealing.

> * * *

> Because of prior contacts with the Court, particularly with regard to the ongoing practice of drug dealing, the Court believes that society needs to be protected and

there needs to be a deterrence. Incarceration is warranted because a lesser sentence would depreciate the seriousness of these offenses.[14]

After imposing sentence, the trial court advised Mr. Hernandez of his appeal rights of filing for post-sentence relief with the trial court or a direct appeal with the Pennsylvania Superior Court and the time periods associated for each.[15] The trial court advised Mr. Hernandez of his right to an attorney and costs of an appeal. Mr. Hernandez told the trial court he understood his appeal rights and had no other questions.[16]

Mr. Hernandez moved a week later seeking to modify his sentence as excessive and unreasonable.[17] The trial court promptly denied Mr. Hernandez's challenge to the discretionary aspect of the sentence. Mr. Hernandez did not take a direct appeal from the trial court's denial of his motion to modify his sentence.

### *Mr. Hernandez moves for post-conviction relief.*

Approximately six months later, on February 6, 2018, Mr. Hernandez pro se petitioned for post-conviction collateral relief claiming ineffective assistance of trial counsel. The trial court appointed the Lancaster County Public Defender's Office to represent Mr. Hernandez in the PCRA action.  PCRA counsel filed an amended petition raising one claim: "Trial counsel was ineffective for failing to have a stipulated bench trial following the denial of the Suppression Motion. Because Mr. Hernandez pleaded guilty and a stipulated bench trial was not held, Mr. Hernandez lost his right to challenge the Court's decision on the Suppression Motion on direct appeal."[18] PCRA counsel requested an evidentiary hearing.

On October 16, 2018, the PCRA court found, after review of the amended PCRA petition and the Commonwealth's response, no genuine issues concerning a material fact; Mr. Hernandez is not entitled to post-conviction collateral relief; and, further proceedings would serve no purpose.

The PCRA court filed a notice of intent to dismiss the PCRA petition without a hearing under Pennsylvania Rule Criminal Procedure 907.[19] Mr. Hernandez did not respond to the Rule 907 notice.

The PCRA court dismissed Mr. Hernandez's amended motion for post-conviction relief on November 16, 2018 with supporting opinion.[20] The PCRA court began its analysis with Mr. Hernandez's voluntary, knowing, and intelligent guilty plea. The court examined the record showing it "conducted a lengthy and thorough guilty plea colloquy. I advised [Mr. ]Hernandez of the charges against him and explained the elements of those offenses as defined by the Crimes Code and the Pennsylvania Standard Jury Instructions (Criminal). . . . [Mr.] Hernandez was also advised that by pleading guilty he was waiving all his rights to trial, jury selection, presumption of innocence and other relevant attributes of procedural due process."[21] The PCRA court additionally considered the written Guilty Plea Colloquy in which "[Mr.] Hernandez manifested his understanding of the offenses against him, the maximum sentences, and the procedural due process rights waived by a guilty plea. [Mr.] Hernandez indicated that he reviewed the colloquy form with his attorney and signed it. . . .  Additionally, [Mr.] Hernandez affirmed that he was satisfied with his attorney's representation and had no complaints or concerns about that representation."[22]

Considering "all the circumstances attendant to the plea, including the adequacy of the plea colloquy, [Mr.] Hernandez's responses therein, [and] the representations by defense counsel," the PCRA court found the guilty plea knowing, voluntary and intelligent and rejected Mr. Hernandez's claim his plea is invalid based on a claim of ineffective assistance of trial counsel.[23] The PCRA court then analyzed whether there is a "reasonable probability [its] decision on suppression would

have been reversed by the Pennsylvania Superior Court on direct appeal, and that in light of this, counsel had no reasonable basis for advising his client to plead guilty."[24]

The PCRA court reviewed all the evidence in the affidavit of probable cause and concluded it established probable cause to issue the search warrants and denied Mr. Hernandez's motion for post-conviction relief.[25]

### *Mr. Hernandez appeals the denial of his motion for post-conviction relief to the Pennsylvania Superior Court who affirms the denial.*

Mr. Hernandez appealed the denial of his amended PCRA petition.[26] His court-appointed PCRA counsel filed a Notice of Appeal to the Pennsylvania Superior Court raising one issue: "The trial court abused its discretion in denying Mr. Hernandez's PCRA petition without holding a hearing and determining that Mr. Hernandez's underlying claim was without merit.  Mr. Hernandez was prejudiced by trial counsel's failure to advise him to have a stipulated bench trial, because by pleading guilty, Mr. Hernandez lost his right to appeal the trial court's suppression denial. There is a reasonable probability that the Superior Court would have reversed the trial court's suppression denial as the Court erred in determining probable cause existed to support the issuance of the warrant to search Mr. Hernandez's person."[27]

Mr. Hernandez filed a counseled brief in the Pennsylvania Superior Court on the single issue alleging ineffective assistance of trial counsel for failing to advise him to have a stipulated bench trial, rather than pleading guilty, causing him to lost his right to appeal the trial court's denial of the suppression motion. The Pennsylvania Superior Court denied Mr. Hernandez's appeal from the PCRA court. The Pennsylvania Superior Court rejected Mr. Hernandez's argument the information in the affidavit of probable cause relying on events in 2013 and 2014 is "stale." The court reasoned while parts of the affidavit of probable cause involved information the Drug Task

Force obtained in 2013 and 2014, the remainder of the affidavit involved two controlled buys and information gained from a second confidential informant with personal knowledge Mr. Hernandez sold drugs from his Zook Avenue, Lancaster residence and out of his car in 2016.[28] This affidavit included information from the second confidential informant he/she saw "multiple bundles" of heroin in Mr. Hernandez's car and purchased heroin from Mr. Hernandez inside his car.

The Pennsylvania Superior Court concluded "[b]ased on a totality of the circumstances, it is evident that the magistrate had probable cause to issue a search warrant of [Mr.] Hernandez's person in July 2016 based on the information contained within the July 8, 2016 affidavit of probable cause."[29] The Superior Court reasoned "information provided in the affidavit shows an ongoing course of conduct, specifically the possession and sale of heroin, on the part of [Mr.] Hernandez. Moreover, just days before the affidavit was prepared, [confidential informant] # 2 conducted a controlled buy from Hernandez at his Zook Avenue residence. The affiant saw [Mr.] Hernandez arrive at the residence driving his black BMW (out of which he also sold heroin) immediately prior to the [confidential informant] emerging from the residence with heroin in his possession. Based on the above information, we conclude that there was sufficient evidence 'to warrant a man of reasonable caution in the belief that a search warrant should be conducted' on [Mr.] Hernandez's person."[30]

The Pennsylvania Superior Court concluded Mr. Hernandez's underlying suppression claim, as it relates to his ineffectiveness issue, did not have arguable merit and the trial court properly dismissed his PCRA petition without a hearing.[31] Mr. Hernandez filed a timely counseled petition for allowance of appeal to the Pennsylvania Supreme Court. The Supreme Court denied Mr. Hernandez's petition on February 12, 2020.[32]

## II.     Analysis

Mr. Hernandez then timely pro se petitioned for habeas relief under 28 U.S.C. § 2254.[33] Mr. Hernandez raises two ineffective assistance of trial counsel claims: (1) trial counsel failed to advise Mr. Hernandez could have a stipulated bench trial to preserve the suppression issue for appeal rather than an open plea; and (2) trial counsel failed to object to the imposed sentence as violating Supreme Court's direction in *Miller v. Alabama*[34] and *Montgomery v. Louisiana*.[35]

The Commonwealth concedes the first ground for habeas relief is exhausted. It argues the Pennsylvania Superior Court reviewed this argument in Mr. Hernandez's PCRA appeal and found it without merit, we must give deference to the Pennsylvania Superior Court, trial counsel cannot be deemed ineffective for failing to raise a meritless issue, and, Mr. Hernandez cannot meet his burden of proof under *Strickland v. Washington*.[36] The Commonwealth argues Mr. Hernandez failed to exhaust his second ground for habeas relief, and the claim is procedurally defaulted, not excused, and without merit.

### A.     Congress sets the standards for review.

Congress defined our standard of review in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[37] "On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"[38] Congress instructs, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[39]

A decision is "contrary to" or "an unreasonable application" of federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts" or if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."[40]

Our Court of Appeals  explains "a state court decision is 'contrary to' clearly established law where 'the Supreme Court has established a rule that determines the outcome of the petition.'"[41] "[I]t is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome."[42] A state court's "unreasonable application" of federal law "must be objectively unreasonable, not merely incorrect."[43]

The second prong of habeas relief, section 2254(d)(2) "sharply restricts the circumstances in which a federal habeas court may grant relief based on a state court's factual determinations. The petitioner must show that the state court verdict was based on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached the same conclusion."[44]

We may not grant a habeas petition to "a person in custody pursuant to the judgment of a State court . . . unless . . . the applicant has exhausted the remedies available in the courts of the State . . . ."[45] Congress requires "state prisoners … give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

appellate review process."[46] "In Pennsylvania, petitioners afford the state courts that opportunity by fairly presenting their claims to the Superior Court, either on direct review or on appeal of a petition under Pennsylvania's [PCRA]."[47] "To fairly present a claim, a petitioner must introduce both the legal theory and its underlying factual support."[48]

Where a petitioner fails to exhaust his claims in state court, the claims are procedurally defaulted, and we may not review them.[49] But we may review procedurally defaulted claims if the petitioner can show (1) "'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation'";[50] or (2) the "fundamental miscarriage of justice exception" restricted "to a severely confined category[ ] of cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'"[51]

To establish "cause," the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[52] "A factor is external to the defense if it 'cannot fairly be attributed to'" the petitioner.[53] To show "actual prejudice," the petitioner "must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"[54] To establish a "fundamental miscarriage of justice," petitioner must show actual innocence.[55]

In *Martinez v. Ryan*,[56] the Supreme Court "recognize[d] a narrow exception to the doctrine of procedural default: '[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.'"[57] A claim of ineffectiveness of counsel may be excused under *Martinez*: "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review

13

collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."[58] Where a state, like Pennsylvania,[59] requires a prisoner to raise an ineffective assistance of trial counsel claim in a collateral proceeding, the prisoner may establish "cause" for a default of such a claim in two circumstances: (1) "where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial"; and, (2) "where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington* . . . ."[60]

The *Martinez* exception is available to a petitioner who can show: (1) "his procedurally defaulted ineffective assistance of trial counsel claim has 'some merit'; and that (2) his state-post conviction counsel was 'ineffective under the standards of *Strickland v. Washington*.'"[61] A claim must be substantial, meaning it has "some merit," akin to the standard for issuing a certification of appealability.[62] "To demonstrate that his claim has some merit, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"[63] This standard differs from the stricter merits analysis under *Strickland*.[64]

**B.    Mr. Hernandez fails to demonstrate ineffective assistance of counsel.**

Mr. Hernandez raises two ineffective assistance of trial counsel claims: (1) trial counsel failed to advise Mr. Hernandez could have a stipulated bench trial to preserve the suppression issue for appeal rather than an open plea; and (2) trial counsel failed to object to the imposed sentence

as violating Supreme Court's direction prohibiting a sentence of life in prison without parole to juvenile offenders set out in *Miller* and *Montgomery*.

We evaluate claims of ineffective assistance of counsel under the two-prong test of *Strickland v. Washington*.[65] "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency."[66]

"To establish prejudice the petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[67] This is a difficult standard for a petitioner to meet: "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[68]

### 1.   Mr. Hernandez's first ineffective assistance claim fails to meet *Strickland*'s performance prong.[69]

Mr. Hernandez first asserts his trial counsel rendered ineffective assistance by failing to advise he could stipulate to trial (instead of pleading guilty) to preserve the suppression issue for appeal. Mr. Hernandez asserts prejudice because, but for his trial counsel's failure to properly advise him, he would not have pleaded guilty. Mr. Hernandez argues the outcome of "the

proceedings" would have been different because he would have been able to appeal the suppression order if he did not plead guilty.[70]

Mr. Hernandez's assertion his trial counsel failed to tell him the implications of a bench trial compared to a plea and would not have pled guilty if properly advised, is contradicted by the record. He cannot succeed because the undisputed facts are to the contrary. The state court did not unreasonably apply federal law or make an unreasonable determination of facts based on the undisputed record.

Mr. Hernandez affirmed to the trial court he understood pleading guilty limited his appeal rights to three specifically enumerated areas—which did not include his suppression motion—and specifically affirmed he understood the form, he had sufficient time to review it with his attorney, and his attorney explained everything to him.

During the plea colloquy with the trial court, Mr. Hernandez swore to the trial court he had an opportunity to speak with his attorney; he is satisfied his attorney answered all of his questions on any issues.[71] Mr. Hernandez understood the elements of the charges against him for possession with intent to deliver a controlled substance (heroin), conspiracy, and possession of drug paraphernalia, and understood the maximum potential sentence for each offense and sentencing guidelines.[72] The trial court recognized Mr. Hernandez earlier expressed concerns about the services rendered by trial counsel and asked if Mr. Hernandez is satisfied with the services rendered. Mr. Hernandez responded he is satisfied.[73]

Mr. Hernandez's statements to the trial judge are directly contrary to his current pro se conclusions. Statements made in court have a "presumption of verity" and the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."[74] "[R]epresentations of the

defendant to his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier to any subsequent collateral proceedings."[75]

Mr. Hernandez's claim, typically arising where a defendant contests a knowing and voluntary plea, is routinely rejected by our courts. For example in *Suarez v. Pennsylvania*,[76] a habeas petitioner challenged her plea as having been improperly induced by her counsel.[77] The court found petitioner "offers nothing to substantiate her claim," pointing to her written guilty plea forms where she "affirmed that her plea was being given freely and voluntarily, without any force, threats, pressure or intimidation, that no promises had been made to persuade her to plead guilty, . . . that she was satisfied with the representation of her attorney," and her testimony at the plea hearing "she gave truthful answers on the written forms and that she had no complaints about counsel's representation."[78]

Mr. Hernandez asks us to assume his counsel failed to properly advise him regarding his guilty plea. But the undisputed record demonstrates otherwise. We cannot find his trial counsel's conduct fell below an objective standard of reasonableness under *Strickland*. Mr. Hernandez confirmed his trial counsel told him of the loss of his appeal rights. Trial counsel's conduct met the objective standard.

We recognize the Pennsylvania Superior Court also addressed *Strickland's* prejudice analysis without specific analysis of Mr. Hernandez admitting he knew of the loss of appellate rights before pleading guilty. We are not suggesting the Pennsylvania Superior Court erred in applying federal law by more fully addressing the futility of an appeal of the suppression ruling. The Pennsylvania Superior Court affirmed the PCRA court's finding Mr. Hernandez voluntarily and knowingly plead guilty after reviewing his written colloquy and speaking with his trial

17

counsel.   Under our standard of review and *Strickland*, the Pennsylvania Superior Court's finding of no merit in Mr. Hernandez's claims is entirely appropriate. We deny Mr. Hernandez's habeas petition.

>    **2.     Mr. Hernandez's second ineffective assistance claim is exhausted, procedurally defaulted, and not excused.**

Mr. Hernandez's remaining claim for ineffective assistance is based on a new challenge to his trial counsel's failure to object to the sentence under *Miller v. Alabama* and *Montgomery v. Louisiana* as requiring a lesser sentence. Mr. Hernandez concedes he did not exhaust this claim and it is procedurally defaulted.[79] He argues his procedural default is excused by *Martinez*.

The *Martinez* exception is available to Mr. Hernandez if he can show (1) "his procedurally defaulted ineffective assistance of trial counsel claim has 'some merit'; and that (2) his state-post conviction counsel was 'ineffective under the standards of *Strickland v. Washington*.'"[80]

Mr. Hernandez cannot meet the "merit" prong because neither *Miller* nor *Montgomery* apply. In *Miller*, later applied retroactively by *Montgomery*, the Supreme Court held "mandatory life [sentences] without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"[81] Mr. Hernandez was not under the age of eighteen at the time of his offenses; he was twenty-four-years old. Mr. Hernandez implicitly concedes he was not a juvenile at the time of his offenses. He instead argues he has "characteristics of youth" as described in *Miller* and his trial counsel's failure to object, or request the trial court to reconsider its sentence under *Miller*, caused his prejudice because the outcome of the sentence would have been different.

In reaching its holding in *Miller*, the Supreme Court reasoned "children are constitutionally different from adults for purposes of sentencing" because they "have diminished culpability and

greater prospects for reform"; have a "'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking"; "'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers"; "have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings"; and "a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].'"[82]

Mr. Hernandez argues the pre-sentence investigation report and psychological report show he has these "characteristics of youth" as described in *Miller*.  Mr. Hernandez points to "cognitive issues, intellectual issues, that he lacks impulse control, poor decision making, and has a history of drug/alcohol abuse" discussed by the trial court at sentencing.[83] Mr. Hernandez relies on ***his attorney's*** interpretation of the pre-sentence investigation and psychological report and then argues his attorney's interpretation of those reports are mitigating factors in sentencing.[84]  This undercuts Mr. Hernandez's argument his counsel failed to request a lesser sentence to the extent *Miller* could somehow apply to an adult's admitted conduct resulting in a sentence far less than life in prison.

The trial court also addressed the psychological evaluation: "Again, I've reviewed the . . . psychological evaluation, which indicates some issues with regard to a ***possible*** learning disability; however, there's nothing to indicate that [Mr. Hernandez] did not understand or know what [he] [was] doing."[85]

There is nothing in the record to support Mr. Hernandez's procedurally defaulted claim. It is without merit. He fails to satisfy the merit prong of *Martinez* and his ineffective assistance claim is defaulted.

**C.      There is no basis for a certificate of appealability.**

We also find no basis for a certificate of appealability. "[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition."[86] Section 2253 provides the standard for a certificate of appealability required for appellate review of a district court's judgment denying habeas relief:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

>> (B) the final order in a proceeding under section 2255.

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).[87]

A certificate of appealability "will issue only if the requirements of § 2253 have been satisfied."[88] A habeas petitioner seeking a certificate of appealability "need only demonstrate 'a substantial showing of the denial of a constitutional right.'"[89] A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[90]

20

Federal Rule of Appellate Procedure 22 contemplates a district court issuing a certificate of appealability in the first instance:

> (b) Certificate of Appealability. (1) In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c). If an applicant files a notice of appeal, the district clerk must send to the court of appeals the certificate (if any) and the statement described in Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2254 or § 2255 (if any), along with the notice of appeal and the file of the district-court proceedings. If the district judge has denied the certificate, the applicant may request a circuit judge to issue it.[91]

Mr. Hernandez has not met his burden in showing a reasonable jurist would disagree with the denial of the petition.

## III.   Conclusion

Jeffrey Hernandez pro se petitions for habeas relief from the Lancaster County state court's conviction of him based on his guilty plea to heroin possession and related drug charges in Lancaster City. His first claim of ineffective assistance is directly contradicted by his sworn statements to the trial judge. His second claim is procedurally defaulted, and there is no merit to his defaulted arguments seeking to extend Supreme Court direction in *Miller* and *Montgomery* to an adult sentenced to a term much shorter than life in prison.

---

[1] Unless otherwise noted, we rely on the state court's November 16, 2018 opinion denying Mr. Hernandez's petition for post-conviction relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541–9546 (1982).  The PCRA court relied on Mr. Hernandez's testimony at his guilty plea hearing. *See* ECF Doc. No. 19-2 at 42 (using the pagination assigned by the CM/ECF docketing system). We take judicial notice of state court dockets. *See Abbott v. Pa. Dep't of Corr.*, No. 06-1451, 2007 WL 1892597, at *2, n.2 (W.D. Pa. June 28, 2007) ("In habeas cases, one court can take judicial notice of the docket of another court.") (collecting cases).

[2] *Id.* at 23–27.

[3] *Id.* at 24–25, ¶¶ 3–9.

[4] *Id.* at 25–26, ¶¶ 10–14.

[5] *Id.* at 26, ¶ 15.

[6] The Commonwealth issued two separate charging documents: Criminal Information No. 3587-2016 charged Mr. Hernandez for the drug related offenses found in his residence, and Criminal Information No. 3588-2016 charged Mr. Hernandez with drug possession found on his person.

[7] May 17, 2017 Suppression Hearing Transcript at 46.

[8] May 17, 2017 Guilty Plea Hearing Transcript at 2–3.

[9] *Id.* at 3.

[10] *Id.* at 5–6.

[11] *Id.* at 7.

[12] *Id.* at 7–8.

[13] For the drug related offenses found at his residence, Mr. Hernandez received a sentence of 33 months to 10 years' incarceration. For the charges related to drugs found on his person, Mr. Hernandez received a concurrent sentence of 30 months to 5 years' incarceration on two counts and 6 to 12 months' incarceration on a third count. The total sentences on both dockets were made consecutive for an aggregate sentence of 63 months to 15 years' incarceration.

[14] July 20, 2017 Sentencing Transcript at 16–19.

[15] *Id.* at 21–22.

[16] *Id.* at 22.

[17] ECF Doc. No. 19-1 at 109 (using the pagination assigned by the CM/ECF docketing system).

[18] ECF Doc. No. 19-2 at 8, ¶ 20 (using the pagination assigned by the CM/ECF docketing system).

[19] *Id.* at 41.

[20] *Id.* at 42.

[21] *Id.* at 47 (citing May 17, 2017 Guilty Plea Transcript at 47-48).

[22] *Id.* at 48 (citing May 17, 2017 Guilty Plea Transcript at 52-53).

[23] *Id.*

[24] *Id.*

[25] *Id.* at 48-53.

[26] *Id.* at 56.

[27] *Id.* at 74.

[28] *See Commonwealth v. Hernandez*, No. 2031 MDA 2018, 2032 MDA 2018, 2019 WL 3974093, at *3 (Pa. Super. Ct. Aug. 22, 2019).

[29] *Id.* In denying Mr. Hernandez's motion for post-conviction relief, the Pennsylvania Superior Court focused its analysis on the underlying suppression motion. The Superior Court did not analyze the PCRA court's finding of a voluntary, knowing, and intelligent guilty plea and waiver, but affirmed the PCRA court's holding and also addressed the merits of the suppression issue.

[30] *Id.*

[31] ECF Doc. No. 19-2 at 117.

[32] *Id.* at 173.

[33] ECF Doc. Nos. 1, 13.

[34] 567 U.S. 460.

[35] 136 S. Ct. 718. In *Miller v. Alabama*, the Supreme Court held sentencing juveniles to mandatory life in prison without the possibility of parole violated the Eighth Amendment's prohibition against cruel and unusual punishments. *Miller*, 567 U.S. at 479. Four years later, in *Montgomery v. Louisiana*, the Court made *Miller* retroactive. *Montgomery*, 136 S. Ct. at 736; *see also Howell v. Superintendent Albion SCI*, 978 F.3d 54, 58 n.5 (3d Cir. 2020) ("The Court subsequently made [the *Miller*] ruling retroactive . . . .").

[36] 466 U.S. 668 (1984).

[37] 28 U.S.C. §§ 2241–2254 (2018).

[38] *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

[39] 28 U.S.C. § 2254(d).

[40] *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 252 (3d Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).

[41] *Id.* (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (en banc), *cert. denied*, 528 U.S. 824 (1999)).

[42] *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Matteo*, 171 F.3d at 888).

[43] *Id.* (citing *Williams*, 529 U.S. at 410).

[44] *Id.* (citing *Campbell v. Vaughn*, 209 F.3d 280, 291 (3d Cir. 2000)).

[45] 28 U.S.C. § 2254(b)(1)(A) (2018)..

[46] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[47] *Rodland v. Superintendent of SCI Houtzdale*, No. 18-1892, 2020 WL 7385089, at *2 (3d Cir. Dec. 16, 2020) (citing *Lambert v. Blackwell*, 387 F.3d 210, 232–34 (3d Cir. 2004)).

[48] *Id.* (citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)); *see also Nara v. Frank*, 488 F.3d 187, 197–98 (3d Cir. 2007) (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam)) ("A petitioner has fairly presented his claim if he presented the same factual and legal basis for the claim to the state courts.").

[49] *See O'Sullivan*, 526 U.S. at 848*; see Greene v. Superintendent Smithfield SCI*, 882 F.3d 443, 449 (3d Cir. 2018) ("[A] federal court may not review federal claims that were procedurally defaulted in state court . . . ." (alterations in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017))).

[50] *Greene*, 882 F.3d at 449 (quoting *Davila*, 137 S. Ct. at 2064–65).

[51] *Id.* at 449 n.8 (alteration in original) (internal quotation marks omitted) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)).

[52] *Davila*, 137 S. Ct. at 2065 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[53] *Id.* (quoting *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

[54] *Murray*, 477 U.S. at 494 (alteration in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[55] *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

[56] 566 U.S. 1 (2012).

[57] *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (quoting *Martinez*, 566 U.S. at 9).

24

[58] *Martinez*, 566 U.S. at 17.

[59] "*Martinez* applies if state law, 'either expressly or as a matter of practicality,' bars prisoners from raising [ineffective assistance of trial counsel] claims on direct appeal. . . . Pennsylvania state law requires prisoners to raise [ineffective assistance of trial counsel] claims on PCRA review, rather than on direct review." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 376 n.12 (3d Cir. 2018) (citation omitted) (quoting *Cox v. Horn*, 757 F.3d 113, 124 n.8 (3d Cir. 2014)).

[60] *Martinez*, 566 U.S. at 14.

[61] *Workman*, 915 F.3d at 937 (footnote omitted) (quoting *Martinez*, 566 U.S. at 14).

[62] *Id.* at 937–38.

[63] *Id.* at 938 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

[64] *Id.*

[65] 466 U.S. 668 (1984).

[66] *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).

[67] *Id.* (quoting *Strickland*, 466 U.S. at 694).

[68] *Id.* at 419 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

[69] The Commonwealth concedes this claim is exhausted.

[70] ECF Doc. No. 13 at 5.

[71] *Id.* at 3.

[72] *Id.* at 5–6.

[73] *Id.* at 7.

[74] *Smith v. Kerestes*, No. 14-714, 2017 WL 2536966, at *9 (W.D. Pa. May 16, 2017) (internal quotation marks omitted) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)).

[75] *Blackledge*, 431 U.S. at 73–74.

[76] No. 11–349, 2014 WL 2922283 (M.D. Pa. June 26, 2014).

[77] *Id.* at *10; *see also Ceballo v. Mazarkiewicz*, No. 09–4982, 2010 WL 2774481, at *12 (E.D. Pa. May 20, 2010) (habeas petition entered his guilty plea knowingly and voluntarily as demonstrated

by a written guilty plea form and oral guilty plea to the offenses charge with "full understanding of what the plea connoted and of its consequences."), *approved and adopted*, 2010 WL 2774463 (E.D. Pa. July 8, 2010).

[78] *Id.* (internal quotations omitted).

[79] ECF Doc. No. 1.

[80] *Workman*, 915 F.3d at 937 (footnote omitted) (quoting *Martinez*, 566 U.S. at 14).

[81] *Miller*, 567 U.S. at 465.

[82] *Id.* at 471 (alterations in original) (first quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010); the quoting *Roper v. Simmons*, 543 U.S. 551, 569, 570 (2005)).

[83] ECF Doc. No. 13 at 7.

[84] July 17, 2017 Sentencing Transcript at 5–8.

[85] *Id.* at 18 (emphasis added).

[86] *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253 (2018)).

[87] 28 U.S.C. § 2253.

[88] *Miller-El*, 537 U.S. at 336.

[89] *Id.* at 327 (quoting 28 U.S.C. § 2253(c)(2)).

[90] *Id.* at 323 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[91] Fed. R. App. P. 22(b)(1).